IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Nancy Fisher,           )
                        )
            Plaintiff,  )
                        )  Civil Action No.: 09 C 6853
      v.                )
                        )  Suzanne B. Conlon, Judge
Vizioncore, Inc. and Quest Software, Inc )
                        )
            Defendants  )

**MEMORANDUM OPINION AND ORDER**

Nancy Fisher sues Vizioncore, Inc. and Quest Software, Inc. under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, claiming they failed to accommodate her disability. Although initially represented by counsel, Fisher is now proceeding *pro se*. Vizioncore and Quest move for summary judgment. For the following reasons, the motions are granted.

**I. Background**

**A. Rule 56.1 Statements**

Local Rule 56.1 establishes a procedure to assist the court in determining which facts are actually contested at summary judgment. This rule applies even to *pro se* litigants. *Greer v. Bd. of Educ. of the City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). Vizioncore and Quest were required to submit with their summary judgment motions a statement of material facts, consisting of short numbered paragraphs, each containing one fact and a citation to admissible evidence backing up that fact. N.D. ILL. LOC. R. 56.1(a)(3). This they did. Fisher was then required to

1

respond to each of those facts, stating whether or not she contested each one. *Id.* 56.1(b)(3). Unlike admissions under Federal Rule of Civil Procedure 36, Fisher cannot rely on a lack of knowledge to deny a fact. If she does not present evidence to refute an asserted fact, the court must assume she would not be able to refute that fact at trial. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). If Fisher disagrees with one of defendants' asserted facts, she must submit evidence to contradict that fact. That evidence could be deposition testimony, properly authenticated documents, or her own affidavit if the information was within her personal knowledge. An unsworn narrative explaining why she disagrees with a fact is not evidence and does not properly contest a fact. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Several of Fisher's responses fail to comply with the rule. Accordingly, all facts to which Fisher does not respond with evidence are deemed true. *See, e.g.,* Pl. Resp. to Vizioncore's Facts ¶¶ 1-11, 15-19, 21, 23, 29-32, 35-40, 44, 48-56, 60. For the remaining facts not specifically admitted, Fisher cites to exhibits attached to her response, consisting primarily of email correspondence concerning her hiring and firing. Although those documents are not properly authenticated, they have sufficient indicia of reliability, given Fisher's *pro se* status, for consideration to the extent they are relevant.

Fisher's Rule 56.1 additional statements of material facts and her affidavit are also defective. She submits more than 40 additional statements of fact, contrary to the rules. N.D. ILL. LOC. R. 56.1(b)(3)(C). Not all of her additional statements cite to admissible evidence, and parts of her affidavit are not based on personal knowledge. But, due to the liberal construction given to pleadings filed by *pro se* litigants, factual statements in Fisher's nonconforming

statement that may be relevant to her claim are considered. The court also considers the emails attached to Fisher's filings.

**B. Facts**

In March 2006, Vizioncore searched for a full-time, in-house bookkeeper/accountant to prepare monthly financial statements to send to Quest, a company that had just bought 75 percent of Vizioncore's shares. Vizioncore Facts ¶¶ 12, 15. To prepare the reports, the accountant needed to interact with other employees and managers and to access confidential financial information that is secured in the office with electronic controls. *Id.* ¶¶ 17-20. Regular attendance was required. *Id.* ¶ 17.

Quest recommended Vizioncore use a recruiter it had used before to find applicants.[1] *Id.* ¶ 13. Fisher was identified as a candidate, and Vizioncore offered her a position as an "in-house accountant."[2] *Id.* ¶ 23, Ex. D. Fisher accepted the offer on April 12, 2006. *Id.* ¶ 24. Vizioncore moved Fisher's daily start time back to 10:00 a.m. because she had been in a car accident and required continuing physical therapy for a neck injury. *Id.* ¶ 26; Fisher Aff. ¶ 4.

---

[1] The recruiter had a quest.com email address and stated in his initial email to Fisher that he "work[s] directly for the Sr. Management bookkeeper team at Vizioncore/Quest Software." Pl. Resp. to Vizioncore Facts, Ex. 21. Fisher asserts the recruiter was a Quest employee and that she herself worked for both Quest and Vizioncore, making both liable for her termination. Quest responds that the recruiter is an independent contractor and that Quest is only the parent corporation of Fisher's employer and cannot be liable. Because Fisher has not shown her termination violated the ADA, it is unnecessary to decide whether Quest would also be liable. This opinion refers only to Vizioncore.

[2] Fisher disputes that she was hired as an "in-house accountant." She contends she was hired as an "accountant/bookkeeper" as described in the initial email from the recruiter. Pl. Resp. to Vizioncore Facts, Ex. 21. The email with the job offer used "in-house accountant," and so the court uses that term. *Id.*, Ex. 107.

3

Fisher started work on Thursday, April 20, 2006. Vizioncore Facts ¶ 32. On Monday, April 24, Fisher notified Vizioncore she would be late. *Id.* ¶ 33. Later, she emailed to say she would not be coming in at all. *Id.* ¶ 34. Fisher missed work on Friday, April 28, because of a prearranged absence for physical therapy and travel plans. *Id.* ¶ 35. The following Monday, May 1, Fisher told Vizioncore she would not arrive until 11:00, but called at 10:40 to say she would not come in at all. *Id.* ¶¶ 36-37. The next day, Fisher called at 10:15 a.m. to report she was on her way. *Id.* ¶ 39. She never showed up or notified Vizioncore about her absence. *Id.* ¶ 40. Vizioncore told Fisher not to come in the next day. Fisher submitted an email from her supervisor, stating, "Bad days were understood from all sides, however, my concern is the frequency of them which might be something that would interfere with our fast passed [*sic*] and rapidly growing company and the duties your position is required to fulfill on daily bases [*sic*]." Fisher Facts, Ex. 80. Fisher was fired on May 4. Vizioncore Facts ¶ 52. It is undisputed she was fired because of her absences, which stemmed from her ailments. *Id.* Fisher stated in a deposition that she would not have been able to commit to working full time. *Id.* ¶ 43, Ex. E.

Fisher filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. Compl., Ex. A. She claimed Vizioncore had agreed to let her work from home two days per week to deal with symptoms from a pinched nerve and herniated disc. *Id.* Nevertheless, she was fired because of the frequency of her bad days. *Id.* The EEOC issued Fisher a right-to-sue letter. *Id.*, Ex. B.

## II. Analysis

Summary judgment is appropriate if the evidence in the record reveals no genuine issue of material fact and Vizioncore is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). When a fact is properly contested, Fisher's version controls, and all reasonable inferences are drawn in her favor. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 974-75 (7th Cir. 2009).

Vizioncore assumes for purposes of this motion that Fisher is disabled but argues she is nonetheless not covered by the ADA because she is not a "qualified individual." A qualified individual must be able to perform the essential functions of a position, with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Budde v. Kane County Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010). The essential functions of a position are determined by "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 679 (7th Cir. 2010) (internal quotations omitted); *see* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job"). Vizioncore's understanding of the essential job functions is presumed correct unless Fisher rebuts it with evidence. *Gratzl*, 601 F.3d at 679.

Vizioncore contends two essential functions of the job are regular attendance and full-time hours. It concludes Fisher cannot be a qualified individual because she missed work four

out of the ten days she worked for Vizioncore and because she admitted in her deposition that she could not work full time. Fisher argues she met the attendance requirement and never agreed to full-time work. According to Fisher, she was hired with the understanding that her hours would be from 10:00 a.m. to 4:00 p.m. and that she could work from home two days a week. She asserts her absences were equivalent to working from home two days a week, and her inability to complete her tasks was Vizioncore's fault for not giving her the "link" she needed to work from home. Additionally, because Vizioncore agreed to let her work from 10:00 to 4:00, Fisher contends it cannot establish the job requires full-time hours.

There appears to be a dispute whether Fisher's accountant position required full or reduced hours. Taking the evidence in a light most favorable to Fisher, Vizioncore agreed to allow her to work a reduced schedule. The legal effect of this purported agreement, that is, whether it changed the number of hours essential to the job, is unclear. A modification because of an employee's disability does not alter the essential functions of a job; it just establishes that the employer is willing to tolerate less than ideal performance. *Waggoner v. Olin Corp*, 169 F.3d 481, 484 (7th Cir. 1999) ("But the fact that Lucent Technologies had infinite patience [for plaintiff's absences] does not necessarily mean that every company must put up with employees who do not come to work"). Nor does it mean the modification is a reasonable accommodation that the employer must continue. *See Winfrey v. City of Chicago*, 259 F.3d 610, 616 (7th Cir. 2001) (job modification granted to employee was an accommodation the city was not obligated to continue and therefore employee had to show he could perform essential duties of unmodified position subject to reasonable accommodations). It is unnecessary to decide which set of hours are essential to Fisher's job. Regular attendance (whether working at the office or from home) is

an essential function, and Fisher has not proposed a reasonable accommodation that would allow her to perform this duty.

Regular attendance was an essential part of Fisher's job. She was hired to prepare monthly financial reports, and her job in part required her to interact with other Vizioncore employees and managers. Vizioncore Facts ¶¶ 19-20. At a minimum, that required Vizioncore employees to be aware of where Fisher would be and when. Generally, employers are not required to accommodate a disability by allowing a disabled employee to work from home. *See Vande Zande v. State of Wisc. Dep't of Admin.*, 44 F.3d 538, 544-45 (7th Cir. 1995) ("[I]t would take a very extraordinary case for the employee to be able to crate a triable issue of the employer's failure to allow the employee to work at home"). This is especially true here. Fisher was a new employee, still learning the ropes and gaining the trust of her supervisors.[3] Nevertheless, construing the facts in her favor, Vizioncore agreed to allow Fisher to work from home two days a week and working from home could satisfy the attendance requirement. Even with that, the particular work-from-home accommodation Fisher requested is unreasonable as a matter of law.

Fisher contends her bad days could be accommodated by allowing her to work from home. Yet, her unexpected absences from work demonstrate she was unable to predict when those bad days would occur. Her requested accommodation, then, was that she be allowed to work from home on demand without any notice to Vizioncore. It is unreasonable to expect an

---

[3] Fisher argues she did not need to be trained because her extensive accounting and bookkeeping experience prepared her for the job. Even though Fisher may have had sufficient accounting skills, she does not explain what she did while employed at Vizioncore. It is unreasonable to infer Fisher would be able to start at a new company and be familiar enough with their operations to start working at once without additional training.

7

employer to tolerate unannounced changes to an employee's schedule for an indefinite period, especially when the employee is still in training. *See Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 896-97 (7th Cir. 2003) (employee's request that "she be allowed to work at home when she was not needed at the office, and that generally, she would determine when it was necessary for her to come to work" was not a reasonable accommodation); *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, (7th Cir. 2001) (en banc) (employee's request for "an open-ended, unlimited amount of 'sick days, if needed[,] without being penalized'" was not a reasonable accommodation (alteration in original)); *Waggoner*, 169 F.3d at 484 (employee's request for "an 'unpredictable' amount of time off from work should her symptoms so demand" was not a reasonable accommodation); *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998) (in determining whether employee can perform job duties, court focused not on the employee's absence alone but on "the excessive frequency of an employee's absences in relation to that employee's job responsibilities"). Fisher faults Vizioncore for firing her without attempting to negotiate a way to accommodate her disability. But Fisher, who bears the burden of proving she could have performed the job duties with a reasonable accommodation, *Mobley v. Allstate Ins. Co*, 531 F.3d 539, 547-48 (7th Cir. 2008), has not suggested an accommodation other than working from home on demand.

### III. Conclusion

Fisher has not established that she is a qualified individual under the ADA because she has not proposed reasonable accommodation that would allow her to attend work regularly. Summary judgment is granted in favor of Vizioncore and Quest.

ENTER:

*Suzanne B. Conlon* (signature)
Suzanne B. Conlon
United States District Judge

November 30, 2010